FILED

99 FEB 26  AM 9:39

U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

In the matter of )
ALABAMA STATE FAIR AUTHORITY, )
)                    Bankruptcy Case No.
)                    BK 94-03695-BGC-9
Debtor. )
)
_____ )
)
MAX C. POPE, SR., as Special Trustee )
for Alabama State Fair Authority, )
)
Plaintiff (Appellee), )
)                    **LEAD CASE:**
)                    **CV 98-BU-2037-S**
vs. )
)
HAAS & WILKERSON, INC., )
)
Defendant (Appellant). )
_____ )
)
MAX C. POPE, SR., as Special Trustee )
for Alabama State Fair Authority, )
)
Plaintiff (Appellee), )
)
)                    CV 98-BU-2813-S
vs. )
)
ALABAMA POWER COMPANY, )
)
Defendant (Appellant). )
_____ )

MAX C. POPE, SR., as Special Trustee )
for Alabama State Fair Authority, )
 )
  Plaintiff (Appellee), )  CV 98-BU-2859-S
 )
vs. )
 )
WZZK, )
 )
  Defendant (Appellant). )
 )
MAX C. POPE, SR., as Special Trustee )
for Alabama State Fair Authority, )
 )
  Plaintiff, )  CV 98-BU-2860-S
 )
vs. )
 )
WODL, )
 )
  Defendant (Appellant). )
 )
MAX C. POPE, SR., as Special Trustee )
for Alabama State Fair Authority, )
 )
  Plaintiff (Appellee), )  CV 98-BU-2861-S
 )
vs. )
 )
WTTO-TV, )
 )
  Defendant (Appellant). )

MAX C. POPE, SR., as Special Trustee )
for Alabama State Fair Authority, )
                                                                               )

        Plaintiff (Appellee), )      CV 98-BU-2862-S

                                                                              )

vs. )

WENN-FM, )

        Defendant (Appellant). )
_____ )

MAX C. POPE, SR., as Special Trustee )
for Alabama State Fair Authority, )
  )

        Plaintiff (Appellee), )      CV 98-BU-2920-S

  )

vs. )

WODL, )

        Defendant (Appellant). )
_____ )

MAX C. POPE, SR., as Special Trustee )
for Alabama State Fair Authority, )
  )

        Plaintiff (Appellee), )      CV 98-BU-2921-S

  )

vs. )

WZZK, )

        Defendants (Appellant). )
_____ )

MAX C. POPE, SR., as Special Trustee          )
for Alabama State Fair Authority.             )
                                              )
          Plaintiff (Appellee),               )
                                              )
vs.                                           )          CV 98-BU-2922-S
                                              )
WTTO-TV,                                       )
                                              )
          Defendant (Appellant).              )
                                              )
MAX C. POPE, SR., as Special Trustee          )
for Alabama State Fair Authority,             )
                                              )
          Plaintiff (Appellee),               )
                                              )
vs.                                           )          CV 98-BU-2969-S
                                              )
ZAMBELLI INTERNATIONALE                       )
FIREWORKS MFG., INC.,                         )
                                              )          ENTERED
          Defendant (Appellant).              )
                                                        FEB 2 6 1999

## Memorandum Opinion

## INTRODUCTION

On June 24, 1994, the Alabama State Fair Authority ("ASFA", "debtor" or "debtor in possession"), filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Alabama. *In re Alabama State Fair Authority*, BK 94-03695-BCG-9.[1] Discovering that ASFA was a municipality — i.e., a "political subdivision or public agency or instrumentality of a State," 11 U.S.C. § 101(40), eligible to file a bankruptcy petition as a debtor under Chapter 9, the Bankruptcy Court "converted" ASFA's Chapter 11 bankruptcy proceeding to a Chapter 9 municipal bankruptcy proceeding on June 23, 1995.[2] On July 18, 1995, the Bankruptcy Court appointed Charles R. Johanson, III, as Special Trustee of the bankrupt's estate under 11 U.S.C. § 926. On motion of Mr. Johanson, the Bankruptcy Court set aside its earlier appointment and appointed Max C. Pope, Sr., as Special Trustee ("Trustee") on April 4, 1996.

Beginning on December 16, 1996, the Trustee initiated preference actions[3] against Alabama Power Company ("Alabama Power"),[4] Zambelli Internationale Fireworks MFG., Inc. ("Zambelli"),[5] Haas & Wilkerson, Inc. ("Haas & Wilkerson"),[6] and Ballard Covert Group ("Ballard") and various

---

[1] Chapter 11 bankruptcy proceedings are available to permit a person or organization to restructure its debts.

[2] A Chapter 9 proceeding permits an insolvent municipality that the State has authorized to be a debtor the opportunity to restructure its debts.

[3] Preference actions are actions utilized to recover for the benefit of the bankrupt's estate transfers of funds or property to a creditor that occurred in some proximity in time to the debtor's filing of its bankruptcy petition and, therefore, to distribute more equitably funds of the estate to the bankrupt's creditors than would otherwise be possible.

[4] The appeal of Alabama Power is presently stayed, pending action by the bankruptcy court on a settlement between it and the trustee.

[5] The Trustee filed his action against Zambelli on February 18, 1997, contending that it received $8,250.00 in preferential payments. Zambelli's appeal centers solely on the issue of whether the statute of limitations had run when the Trustee's preference action against it was filed. Because the specific facts of Zambelli's relations with ASFA are not relevant to the instant appeal, the court will not discuss them here.

[6] The Trustee filed the action against Haas & Wilkerson on May 2, 1997, alleging that the insurance broker had received $61,484.00 in preferential transfers.

media outlets, including WZZK, WODL, WTTO-TV, and WENN-FM.[7]  On September 23, 1997, the Bankruptcy Court entered an order in response to an assertion initially made by Alabama Power Company, but also made by Zambelli, Ballard, WZZK, WODL WTTO-TV and WENN-FM, among others, that the statute of limitations on the actions brought against them by the Trustee had run.  In its order, the Bankruptcy Court rejected this contention, finding that the limitations period in the instant case would not run until the bankruptcy case was closed.  *See In re Alabama State Fair Authority*, 214 B.R. 929 (Bank. N.D. Ala. 1997).  On March 30, 1998, the Bankruptcy Court granted a motion for summary judgment filed by Haas & Wilkerson, finding that it was not an initial transferee from whom a preference by ASFA is recoverable.  On September 30, 1998, after a trial held on May 18 and 19, 1998, the Bankruptcy Court entered findings of fact and conclusions of law in which it concluded that Zambelli had received preferences which were recoverable by the Trustee and that, while perhaps avoidable, any preferential transfers made to WZZK, WODL, WTTO-TV and WENN-FM were not recoverable.  The Trustee appeals the unfavorable decisions with regard to Haas & Wilkerson, WZZK, WODL, WTTO-TV and WENN-FM on the grounds that these defendants were all initial transferees within the meaning of § 550(a) of Title 11 from whom the alleged preferences were recoverable.  Zambelli appeals the unfavorable decision rendered against it by the Bankruptcy Court, arguing that the statute of limitations on the Trustee's preference actions had run when the Trustee initiated his action against it.[8]  WZZK, WODL, and WTTO-TV cross-appeal on the same grounds advanced by Zambelli, that the limitations period had expired when the Trustee initiated his preference actions.

---

[7] On July 17, 1997, almost two years after a Trustee was appointed in the action, the Trustee brought an action against Ballard, WQEN-FM, WMJJ, WJLD, WATV-Radio 900, WERC-AM, WTUG, Alabama Outdoor Advertising, The Birmingham News, Birmingham World, Birmingham Times, TCI Cablevision, Birmingham Cable Advertising, WVTM-TV, WBRC-TV 6, WBMG, WTTO-TV, WODL, WZZK and WENN.  Only WZZK, WODL, WTTO-TV and WENN-FM are the subjects of the instant appeal.  Ballard is referred to in the main text because its relations to ASFA, WZZK, WODL, WTTO-TV and WENN-FM are central to the resolution of the claims against these appellees.

[8] This was also the basis for the Alabama Power appeal.

Haas & Wilkerson

In the instant case, Haas & Wilkerson was used as an insurance broker by ASFA to procure a comprehensive general liability policy and a property and casualty policy.[9]   Haas & Wilkerson obtained these policies through an agreement with National Fire Insurance Company ("National Fire"). As part of the agreement, Haas & Wilkerson was to transmit to National Fire, forty-five (45) days after the end of any month in which it billed ASFA, premiums for the respective policies issued by National Fire.

National Fire issued the general liability policy effective February 19, 1993, at an annual premium of $35,235.00; the premium on this policy was advanced to National Fire by Haas & Wilkerson. This annual premium was to be adjusted based upon ASFA's gross receipts during the policy term. ASFA never made any payments on the general liability policy. As per the requirements of the policy, however, at the end of the policy year, National Fire audited ASFA's gross receipts and consequently adjusted down the premium on the policy by $ 16,328.00. A credit in that amount was given ASFA for the year in which the premium was purchased and the credit was sent to Haas & Wilkerson on April 8, 1994. Haas & Wilkerson retained the amount and credited the account of ASFA $16,328.00, never sending the credit to ASFA.[10]

_____

[9]  Haas & Wilkerson is an insurance broker whose function it is to determine the insurance needs of a client and purchase the appropriate insurance products from the insurers for whom it operates as a broker in its natural course of business. Apparently, as an insurance broker, Hass & Wilkerson bills each client for the premiums of the purchased insurance products, sending the client an itemized account of the premium charges, finance charges, and other credits and payments related to the purchase of insurance. Payments made to Haas & Wilkerson by its clients are bundled and used to make premium payments to an insurer providing coverage to the client; these payments are accompanied by a listing indicating the components of funds which comprise the payment such as the identity of the insured, the policy number, policy date and the amount. Haas & Wilkerson deducts a commission from the premiums paid to it, before payment is transferred to the insurer.

[10]  The Trustee seems to argue on appeal that the $16,328.00 transfer was preferential because Haas & Wilkerson was an initial transferee. However, the bankruptcy court found such transfer not to be a preference for entirely different reasons, i.e., that the credit to Haas & Wilkerson by National Fire was a transfer of the debtor's interest in property of the estate. As that court stated:

> The $16,328.00 transfer was a *credit* from the defendant to the debtor, not a credit from the debtor to the defendant. A credit of this type is not, and cannot, be a "transfer of interest of the debtor in property to or for the benefit of a creditor," 11 U.S.C. § 547(b)(1). There is simply no evidence otherwise. Nothing was transferred and regardless of whatever else can be said of the $16,328.00 credit to the debtor; or whatever events occurred before, during or after that credit, including any other relationship the debtor and the defendant may have, or may have had; ir the status of any payments or charges that may have been made or continue to exist between the debtor and the defendant — the fact is that no payment, in any form, was ever made by the debtor to the defendant on the policy represented by this contested transaction, consequently, no transfer could have

The property and casualty policy was issued by National Fire on September 1, 1993, at a premium of $53,000.00. In that month, Haas & Wilkerson paid $8000.00 to National Fire on the policy. On January 31, 1994, outside of the preference period,[11] ASFA paid to Haas & Wilkerson $5000.00 on the policy. Next, ASFA paid to Haas & Wilkerson $45,000.00 on the policy within the preference period, on May 24, 1994. On July 13, 1994, and again on August 9, 1994, Haas & Wilkerson paid premiums of $16,112.00 to National Fire.[12]

## WZZK, WODL, WTTO-TV and WENN-FM

ASFA hired Ballard, an advertising agency, to provide it with advertising in connection with the Alabama State Fair. Among the services that Ballard was engaged to perform were the determination of the ASFA's advertising needs, the creation of advertisements, the production of those advertisements and the placement of those advertisements in media outlets, among whom are WZZK, WODL, WTTO-TV and WENN-FM ("media outlets"). As per their contracts with Ballard, the media outlets submitted to Ballard bills for their respective advertising; Ballard, having calculated its costs in procuring and placing the advertising, including the costs of running the advertisements in the media outlets, in turn submitted a bill to ASFA for its services and costs. As ASFA did not promptly pay Ballard's bill for its services, Ballard contacted the media outlets and requested that it not be required to pay them until payment was received by it from ASFA.[13]

Ballard sued ASFA in state court for the amount it was owed. The suit was resolved on June 6, 1994, within the preference period, by a payment from ASFA to Ballard of $155,626.49. Ballard issued payment to the media outlets the day after it received payment from ASFA.

---

occurred.

Memorandum on Trustee's Motion to Reconsider, filed June 29, 1998, at 4. As there exists no genuine issue of material fact to the contrary, on this point the bankruptcy court's reasoning is sound.

[11] The preference period is that period of time within which a certain transfer to a creditor by a debtor can be recovered.

[12] It is the $45,000.00 transfer that the Trustee claims on appeal was a preferential transfer recoverable from Haas & Wilkerson.

[13] Ballard states that given the sheer amount of money owed it by ASFA, it was required to request that the media outlets defer receipt of payment, as Ballard was unable to perform its normal practice of paying out-of-pocket the amount owed to those outlets.

## CONTENTIONS & ANALYSIS

The instant appeals and cross-appeals center on two issues, the first being when the statute of limitations set forth in 11 U.S.C. § 546(a) expires on an action brought by a Trustee appointed under § 926(a) of Title 11 and the second being who is an initial transferee within the scope of § 550(a) of Title 11.  Appellant Zambelli and cross-appellants WZZK, WODL and WTTO-TV contend that the Bankruptcy Court improperly determined that the statute of limitation on the Trustee's preference actions did not run until the bankruptcy proceeding was closed or dismissed, as set forth in § 546(a)(2).  The Trustee appeals the determination by the Bankruptcy Court that Haas & Wilkerson, WZZK, WODL, WTTO-TV and WENN-FM were not initial transferees because Haas & Wilkerson **was** a conduit through which ASFA's payments flowed to National Fire, and because Ballard **was not** a conduit through which ASFA's payments flowed to the media outlets' direct benefit.

### I.  STATUTE OF LIMITATIONS.

Prior to its amendment on October 22, 1994, 11 U.S.C. § 546(a), which set forth the statute of limitations on preference and avoidance actions brought in favor of a bankrupt's estate, stated:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of —
> > (1) two years after the appointment of a trustee under sections 702, 1104, 1163, 1302, or 1202 of this title; or
> > (2) the time the case is closed or dismissed.

Among the actions covered by the section are the actions brought by the Trustee in this case pursuant to § 547(b) to avoid certain preferential transfers allegedly received by the appealing defendants.  Zambelli, WZZK, WODL and WTTO-TV contend that although the actions commenced against them on behalf of ASFA's estate were initiated within two years of the appointment of the Trustee, the date from which the two year limitation period began to run was June 24, 1994, the date on which ASFA filed its bankruptcy petition, because that was the date on which it gained the authority

to bring actions against those creditors who had received recoverable preferential transfers.[14]  In addition, argue Zambelli, WZZK, WODL and WTTO-TV, the filing of the respective actions by the Trustee arguably within two years of the his appointment did not work to bring those actions within the limitations period because the appointment of a trustee does not restart the limitations period set forth in § 546(a).  Further, Zambelli, WZZK, WODL and WTTO-TV assert, because the Trustee was not appointed pursuant to sections 702, 1104, 1163, 1302 or 1202 of Title 11, but rather was appointed pursuant to 11 U.S.C. § 926(a), a provision for the appointment of a trustee not listed in § 546(a), the appointment of the Trustee could not restart the clock on the two year period, even if appointment of a trustee under these other sections does restart the limitations period.  Therefore, contend Zambelli, WZZK, WODL and WTTO-TV, the limitations period ran on June 24, 1996, two years after ASFA filed its bankruptcy petition and prior to the initiation of preference actions against Zambelli, WZZK, WODL and WTTO-TV by the Trustee.

The Trustee responds, first, that as § 546(a)(1) is inapplicable both to a trustee appointed under Chapter 9 and to a debtor in possession in a Chapter 9 bankruptcy proceeding, the governing statute of limitations on any preference action brought by such a trustee is simply "the time the case is closed or dismissed," an event that had not occurred at the time the actions against Zambelli, WZZK, WODL and WTTO-TV were brought by the Trustee.  In the alternative, the Trustee argues, because the term "trustee" is referenced in § 546(a), it should be the time of the appointment of a trustee, rather than the time that the debtor in possession gains possession of the estate — the time of the filing of the bankruptcy petition — that governs when the statute of limitations begins to run.  Finally, the Trustee contends that even if the limitations period starts when a debtor in possession files its bankruptcy petition, the interceding appointment of a trustee under § 926(a) restarts the limitations period.

---

[14]  Focus on the date of the filing of the petition by the Chapter 9 municipal debtor may not be entirely correct. It is possible that such debtor does not gain the authority to pursue its preference actions until the order for relief is entered under 11 U.S.C. § 921(d).  *But see* 11 U.S.C. § 922(a) (stating that the automatic stay is initiated, and the claims against the estate are "frozen," once a petition is filed under 11 U.S.C. § 301).  Whether or not the case, it is irrelevant; the entry of the order for relief was nearly simultaneous with the "conversion" of the case to one under Chapter 9 from Chapter 11, and the authority to bring preference actions bestowed upon the debtor under that chapter carried over to the Chapter 9 proceeding.  *Also see infra* at n. 15.  The court will, for convenience sake, refer to the filing of the petition by the municipal debtor as the event triggering the authority of a municipal debtor to bring preference actions, and thus allegedly starting the § 546(a)(1) limitations period for a municipal debtor under Chapter 9, throughout this opinion, recognizing that this may not, in fact, be wholly true.

In resolving the limitations issue, two questions must be addressed. First, the court must determine whether the limitations period contained in § 546(a)(1) begins to run upon the filing of the bankruptcy petition by the debtor in possession. If § 546(a)(1) is not applicable to a debtor in possession under Chapter 9, then the statute of limitations will not have run, whether the provision is applicable to a trustee appointed under § 926 or not.[15] However, if § 546(a)(1) is applicable to a

---

[15] It is easy to see why this must be so: If the limitations period did not begin to run when the petition was filed by ASFA and if it did begin to run when the Trustee was appointed under § 926(a), the actions were filed within the two year period — i.e., within two years after the appointment of the Trustee. If § 546(a)(1) does not apply to a trustee appointed under § 926(a), in addition to a Chapter 9 debtor in possession, then the statute of limitations could not run until closure or dismissal of ASFA's case. Either way, the limitations period in the instant case would not have run.

There exists the further issue of whether the "conversion" of the instant case from a Chapter 11 bankruptcy proceeding to a Chapter 9 bankruptcy proceeding restarted the limitations period. If it did, the action Zambelli was timely brought, regardless of whether ASFA's filing of its bankruptcy petition initiated the two-year limitations period under § 546(a)(1). The court believes that the "conversion" did not restart the limitations period because the case could not be "converted" in the traditional bankruptcy sense. Normally, a conversion occurs when it becomes apparent that a debtor in a Chapter 11 case will be incapable of paying down his debts under a reorganization plan. In such instance, the proceeding is converted to one under Chapter 7. *See* 11 U.S.C. § 1112. Occasionally, a Chapter 11 case may be converted to one under either Chapters 12 or 13. *Id.* The bankruptcy court determined that under § 1112(f), this case could be converted from Chapter 11 to Chapter 9. However, the language of § 1112(f), which allows conversion from Chapter 11 to another chapter only where the Chapter 11 debtor could be a debtor under the chapter to which the case is being converted, is not expansive, but constrictive, further limiting the circumstances under which a conversion set out in subsections 1112(a)-(e) can be accomplished. *See In re Tornheim*, 181 B.R. 161, 169 (Bank. S.D.N.Y. 1995) (stating that in addition to prerequisites set forth in § 1112(d), debtor seeking to convert case from Chapter 11 to Chapter 13 must satisfy requirements of § 1112(f)); *In re Eureka Southern R. Co., Inc.*, 177 B.R. 323,324 (Bank. N.D. Cal. 1995) (holding that conversion of case from Chapter 11 to Chapter 7 under § 1112(b)(2) cannot be accomplished unless debtor also satisfies requirement set forth in § 1112(f)); and *In re Reppert*, 84 B.R. 37, 40 (Bank. E.D. Pa. 1988) (suggesting that debtor's case could not be converted from Chapter 11 to Chapter 12 because in addition to not satisfying requirements of § 1112(d), debtor did not satisfy § 1112(f) requirements). The court notes that these cited case appears to exhaust the Supreme Court, Court of Appeals, District Court and Bankruptcy Court cases on the subject.

Because §§ 1112 does not justify the "conversion" in this case, there are not statutory grounds supporting such "conversion." This leaves the court with a problem that is, perhaps, jurisdictional. An unauthorized conversion may constitute little more than a dismissal, robbing the bankruptcy court of continuing jurisdiction over ASFA's bankruptcy because it has ceased to be. The way around this difficulty, as the court sees it, is to treat the "conversion" as an amendment to the debtor's original complaint. Because this case cannot be "converted" under § 1112, the "new" petition for bankruptcy, if such was filed, can only be treated as an amended complaint under Federal Rule of Civil Procedure 12. As such, the case was properly a Chapter 9 proceeding from its inception, even though it was not considered such at the time, through error or inadvertence of ASFA; the amended petition relates back to the date of the original petition filed in the bankruptcy court. *See* FEDERAL RULE OF CIVIL PROCEDURE 15(c)(2) ("An amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . .").

Even were there a "conversion" as presented in Title 11, such "conversion" would not restart the limitations period. Under 11 U.S.C. § 348, conversion of a case "does not effect a change in the date of the filing of the petition." Although § 348(a) is not applicable to Chapter 9 actions, the court can only make sense of such conversion if that section is applied "through" Chapter 11. As such, the date of the filing of the petition for purposes of the statute of limitations in § 546(a) would remain unvaried.

debtor in possession in a Chapter 9 proceeding, the statute of limitations on the actions brought by the Trustee has run, so long as a second question is not answered in the affirmative. This second question is: Does the appointment of a trustee under § 926(a) restart the limitations period? This question can be answered affirmatively only if, one, § 546(a)(1) is applicable to a trustee appointed under § 926(a) and, two, the appointment of such a trustee restarts the limitations period set forth in § 546(a)(1).[16]

## A. Is § 546(a)(1) applicable to a debtor in possession in a Chapter 9 proceeding?

This court first notes that no Circuit Court of Appeals has addressed the issue of when the statute of limitations set out in § 546(a) begins to run on an action commenced by a trustee appointed in a Chapter 9 bankruptcy or by a debtor in possession under the same Chapter.[17] The

---

In addition to potential problems arising out of the "conversion" itself, it is possible that the failure of the debtor to have filed its action under the Chapter 9 initially deprived the Bankruptcy Court, and, consequently, this court, of jurisdiction. This problem arises not because the "conversion," but because the language of Chapter 9 potentially indicates that a debtor in such a proceeding must choose to file its action under Chapter 9 at the initiation of its case. For example, this court notes that it is a statutory requirement of § 921(b) that the Chief Judge of the Eleventh Circuit Court of Appeals designate the bankruptcy judge who is to "conduct the case." Although the Bankruptcy Court requested then Chief Judge Tjoflat to designate a Bankruptcy Judge to hear the instant case after "conversion," this court is uncertain whether following this statutory directive after a failure to have filed under the appropriate chapter, can cure the "conversion" of the case from a Chapter 11 to a Chapter 9 case. Mere "conversion," the court supposes, by amended complaint is arguably not sufficient to remedy this failure. However, because it is so late in the day and so many resources have been expended on this bankruptcy, the court will assume that the lack of statutory support for the "conversion" is not a jurisdictional defect but merely a procedural failure not raised by the parties to this action. Therefore, the fact that there is no statutory authority for the initial filing of the case or for the "conversion" in this case does not settle the matter against the existence of jurisdiction. In any case, if the "conversion" can be treated as a re-filing of the municipal debtor's petition, then, hopefully, there is no issue of jurisdiction.

[16] There is a third possible manner in which the statute of limitations period could be restarted or extended: if the appointment of a trustee eliminated the statute of limitations in § 546(a)(1) from consideration in the case. If such were the case, upon appointment of a trustee under § 926(a), the § 546(a)(1) limitations period would be removed from the case, rendering the relevant limitations period the close or dismissal of the bankruptcy case. However, § 546(a)(1) does not speak of events which terminate the two year limitations period (other than the exhaustion of that time period), only of those events which initiate it. Further, were this the case, it would be possible for the limitations period to run in the two year period set out in § 546(a)(1) and then later be resumed, to expire upon the close or dismissal of the case, much like an erratic stoplight. Reinitiating the limitations period is at least a possibility under the statute; eliminating the period before (or even after) its time has run is simply absurd. Further see *Gleischman Sumner Company v. King, Weiser, Edelman & Bazar,* 69 F.3d 799, 802 (7th Cir. 1995), contained *infra* at 25 for a similar point.

[17] The court notes that, to some degree, any resolution of this issue will probably be the first and final word of a district court on the subject with respect to the timing of a preference action brought by parties in a Chapter 9 proceeding under the pre-amendment § 546(a). However, given that the post-amendment § 546(a) does not reference the appointment of a trustee under § 926(a) of Title 11, some of the analysis here may be relevant to the analysis of the issue in post-amendment § 546(a) cases, particularly with regard to the issue of whether appointment of a trustee under

issue of how the court is to treat a failure of § 546(a)(1) to designate the event triggering the start of the two year limitations period has, however, come up in cases in which a debtor in possession under Chapter 11 brought a preference action two years after the filing of its petition for reorganization. In these cases, the conclusions of the Circuit Courts of Appeals deciding the issue have been mixed and the holdings of a majority of those courts have been generally at odds with the conclusions of the district courts and bankruptcy courts.[18] However, from these cases can be gleaned insights into the two questions essential to the solution of the statute of limitations issue in this case.

In *Zilkha Energy Company v. Leighton*, 920 F.2d 1520 (10th Cir. 1990), Zilkha Energy Corporation brought an action as a debtor in possession to avoid preferential transfers under §§ 544 & 548 of Title 11 nearly five years after it filed its Chapter 11 petition for reorganization. According to Zilkha, it had overpaid each of the defendants his or her share of royalties on an oil and gas lease. The defendants contended that the debtor's action was due to be dismissed, among other reasons, because it was untimely filed. The district court dismissed the action and appeal was taken to the Tenth Circuit Court of Appeals, which affirmed in part and reversed in part the district court's dismissal. In so doing, the Court of Appeals concluded that § 546(a)(1) was applicable to a debtor in possession under Chapter 11, requiring the debtor in possession to file a preference action within two years of filing its petition for reorganization.

> The key to this case is the scope of § 546(a), and the question to resolve is whether a debtor in possession is subject to the same two-year statute of limitations as an appointed trustee. We believe § 546 is ambiguous; therefore, it must be construed. We do not believe that Congress intended to limit actions filed by an appointed trustee to two years without making the same restriction apply to a debtor in possession who is the functional equivalent of an appointed trustee. Because of the virtual identity of function between a trustee and a debtor in possession, there would be no reason to create a different limitation period for the filing of actions by the two fiduciaries. Moreover, when the balance of § 546 is considered, it is even more apparent that Congress intended for the word "trustee" to apply to a debtor in possession, for every reference to actions brought by a trustee contained in § 546 obviously applies to actions brought by a debtor in possession. A contrary analysis would deprive § 546 of significance in the majority of recovery actions filed in chapter 11 cases.
> Consequently, we construe § 546(a)(1) to apply to actions filed by a debtor in possession, and we believe the period of limitation begins to run from the date of the filing of a petition for reorganization under chapter 11. We reach that conclusion because the debtor

---

§ 926(a) starts the one-year limitations period for a trustee's preference action set forth in the new § 546(a).

[18] Nonetheless, the post-amendment § 546(a) legislative history seems to have borne out the contentions of those Circuit Courts of Appeals in the majority. *See infra*.

becomes a debtor in possession on that date. Following this analysis, it is clear the trial court correctly dismissed the bankruptcy actions filed by plaintiff because those actions were commenced long after two years from the filing of the petition for reorganization.

*Id.* at 1524 (footnotes omitted).

In *In re Softwaire Center International, Inc.*, 994 F.2d 682 (9th Cir. 1993), the debtor in possession filed a complaint in an action which was governed by the limitations period set out in § 546(a). The Ninth Court of Appeals, expressly following *Zilkha*, determined that § 546(a)(1) prevented a debtor in possession from bringing an action after two years from the filing of the petition for reorganization. *Id.* at 683. In so doing, the Court of Appeals addressed criticisms leveled against *Zilkha* by "a number of bankruptcy courts." *Id.* The Court of Appeals singled out concerns raised by two of the bankruptcy courts among those critical of the *Zilkha* holding. In the first of these cases, *In re Cardullo*, 142 B.R. 138, 139 (Bank. E.D. Va. 1992), the bankruptcy court found that because it was "clear on its face" that § 546(a)(1) applies only to appointed trustees and that "[a] debtor-in-possession is not appointed under the Bankruptcy Code," § 546(a)(1) could not provide a two year limitation on actions brought by a debtor in possession. Rebuffing the *Cardullo* court's "clear language" argument, the Court of Appeals in *Softwaire* stated that in interpreting the statute, more than the mere specific provision being read is to be considered; rather, the court is to examine the language in the context of the entire Bankruptcy Code. Reading § 546(a) in conjunction with § 1107(a) of Title 11,[19] which subjects a Chapter 11 debtor in possession "to the limitations imposed on [a trustee]," and examining the legislative history of § 1107, which contains assertions that a debtor in possession is a trustee's equivalent "'in every way,'" the Court of Appeals concluded that the overall language in the statute imposed the two year limitation period on actions brought by a Chapter 11 debtor in possession. *Id.* at 684.

The Court of Appeals also examined the criticism contained in *In re Pullman Construction Industries, Inc.*, 132 B.R. 359, 361 (Bank. N.D. Ill. 1991), that "[e]quating a debtor in possession with a trustee" would ignore "the reality of reorganization." By forcing "debtors in possession to sue the very creditors with whom they are trying to negotiate and from whom they are attempting to get

---

[19] Section 1107(a) of Title 11 states, in relevant part:

Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties . . . . of a trustee serving in a case under this chapter.

credit," the bankruptcy court reasoned, the "issue of preferences" would be too early introduced into relations between the parties, "imped[ing] rather than aid[ing] the formulation of a consensual plan of reorganization." *Id.* Rejecting the bankruptcy court's rationale, the Ninth Circuit Court of Appeals responded:

> First, the debtor in possession has two years to negotiate before filing suit, and second, nothing prevents further negotiations leading to a settlement after suit is filed. Debtors in possession are in the same position as trustees, making *Zilkha*'s "functional equivalent" reasoning persuasive. We believe that the criticism that *Zilkha* ignores economic reality is of little help in interpreting § 546(a).

*In re Softwaire Center International, Inc.*, 994 F.2d at 684.

The Third Circuit Court of Appeals, in *In re Coastal Group, Inc.*, 13 F.3d 81 (3ᵈ Cir. 1994), fell in line with the reasoning of the courts in *Zilkha* and *Softwaire*. In so doing, the Court of Appeals rebuffed a number of arguments advanced by the debtor in possession as to why § 546(a)(1) should not apply to it:

> First, [the debtor] focuses on the phrase "appointment of a trustee" in § 546(a)(1). [The debtor] reasons that a debtor-in-possession is not appointed but comes into existence with the filing of a bankruptcy petition and is eliminated when a trustee is appointed. Thus, [the debtor] argues, to substitute the word "debtor-in-possession" for the word "trustee" is § 546(a)(1) renders that provision — which refers to the "appointment of a trustee" — nonsensical. We find this emphasis on the word "appointment" too literal. That term has been construed as general enough to include *elected* trustees. Moreover, rather than substituting the term "debtor-in-possession" for the term "trustee," the more natural approach would view § 1107(a) as an invitation to substitute the term "debtor-in-possession" for the entire § 546(a)(1) phrase "trustee appointed under Section 702, 1104, 1163, 1302, or 1202 of this title. . . ."
>
> Second, [the debtor] contends that because Congress left § 546(a)(1) unchanged when it amended the Bankruptcy Code in 1984, we should regard Congress as having adopted the rulings of the two bankruptcy courts which had held, prior to that time, that a debtor-in-possession is not subject to the two-year limitations period of § 546(a)(1). We see little merit in this contention. Although reenactment of a statute "generally includes the settled judicial interpretation" thereof, *Pierce v. Underwood*, 487 U.S. 552, 567 [] (1988), when there is no direct evidence that in amending a statute Congress considered a particular issue that is presented in subsequent litigation, a court should not construe the statute's reenactment as a congressional approval of the earlier judicial construction. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 336 n.7 [] (1971). [The debtor] does not refer to any evidence in the legislative history of the 1984 amendments to the Bankruptcy Code that would indicate that Congress gave the issue currently before this court any consideration. . . .
>
> Third, [the debtor] argues that specific provisions of § 546(a)(1) supercede the general provisions of § 1107(a) which grant a debtor-in-possession the rights and duties of a trustee. Assuming that the two provisions conflict, we believe that it is more appropriate to regard § 1107(a) as the specific provision, because that provision is the one that defines the

scope of the powers of and limitations on a debtor-in-possession. Moreover, the tenet that a specific provision takes precedence over a general one applies only when there is an inescapable conflict between the two, and we find no such inescapable conflict here. [The debtor] concedes that § 1107(a) authorizes this court to read the word "trustee" in §§ 547 and 553 to include a "debtor-in-possession." Insofar as we conclude that § 1107(a) similarly authorizes this court to read the word "trustee" — or, more broadly, the phrase "trustee appointed under . . . ." — in § 546(a)(1) to include a "debtor-in-possession," the two provisions do not conflict.

*Id.* at 84-85 (footnotes omitted).

The Court of Appeals also dispensed with arguments against applying § 546(a)(1) to debtors in possession grounded in "policy."[20] Responding to the argument that equating a debtor in possession with a Chapter 11 trustee ignores their actual roles in reorganization, the Court of Appeals restated the rationale of the Ninth Circuit Court of Appeals in *Softwaire* and further asserted that, functionally, no difference exists between a debtor-in-possession and a trustee with respect to dealings with creditors, both in strategy and motivation; a trustee, like a debtor in possession, will attempt to negotiate with the creditors who vote to accept or reject the debtor's reorganization plan and therefore, the trustee has the same barriers to bringing a preference action against a creditor as would a debtor-in-possession. As no more strategic hurdles confront a debtor in possession than a trustee in bringing a preference avoidance action, there is no reason to provide it a longer period in which to commence a preference action. *Id.* at 85-85. "Application of the two-year limitations period of § 546(a)(1) to a debtor-in-possession would thus compliment the debtor's duty to negotiate in good faith with the individual creditors against whom the debtor may have preference or avoidance claims and to disclose early on to its creditors the potential for recovery of assets for the estate." *Id.* at 86. The Second Circuit Court of Appeals, in *In re Century Brass Products, Inc.*, 22 F.3d 37 (2$^d$ Cir. 1994), essentially followed the reasoning of the Third Circuit Court of Appeals to come to the same result.

*In re Maxway Corporation*, 27 F.3d 980 (4th Cir. 1994), decided by the Fourth Circuit Court of Appeals, diverges from the line of cases finding that § 546(a)(1) applies to debtors in possession. In determining that the filing of a petition by the Chapter 11 debtor in possession does not begin the

---

[20] The court notes that the word "policy", as it is commonly used, is a ubiquitous term, which can refer to nearly any reason not concerning precedent or statutory language employed to justify a result. Used as a modifier of the noun "reason" or "justification," or even used on its own as a noun, the term "policy" is generally empty surplusage and should be avoided.

running of the two-year limitations period set forth in § 546(a)(1), the Circuit Court of Appeals first resurrected the "clear language" argument laid to rest in *Softwaire*. Focusing on the specific language of § 546(a)(1), the Court of Appeals found that the statute simply states "that an avoidance action under §§ 544, 545, 547, 548, or 553 be commenced within two years after the appointment of one of the specified trustees or prior to the close or dismissal of the case, whichever occurs earlier," and therefore, an avoidance action could be timely filed greater than two years after the filing of a bankruptcy petition by a debtor in possession "because a trustee had not been appointed and the action was commenced prior to the close or dismissal of the case." *Id.* at 983.[21]

The Fourth Circuit Court of Appeals, like the Third Circuit Court of Appeals, concluded that § 546(a)(1) and § 1107(a) did not contradict one another, but unlike the Third Circuit Court of Appeals, the Fourth Circuit Court of Appeals found that § 1107(a) was entirely silent on the manner in which § 546(a)(1) was to be interpreted.

> We believe that Maurice's argument misconstrues the function and interaction of §§ 546(a) and 1107(a). Section 1107(a) confers upon a debtor in possession the power and authority of a Chapter 11 trustee. The operation of § 1107(a) thus provides standing to debtors in possession to seek the avoidance of preferential transfers even though § 547 explicitly refers only to trustees. Subsections (b)-(g) of § 546 similarly limit a trustee's — and through the operation of § 1107, a debtor in possession's — authority to recover property under §§ 544, 545, 547, 548, or 549. See 11 U.S.C.A. § 546(b)-(g) (West 1993). However, unlike the remainder of § 546, subsection (a) is not directed at limiting the authority of trustees to recover property. Rather, it establishes the time period within which an action may be commenced under §§ 544, 545, 547, 548 or 553. It provides that no one may bring an avoidance action more than two years after the appointment of the enumerated trustees, not that the enumerated trustees may not commence an avoidance action more than two years after their appointment. Thus, by its terms, § 546(a) applies both to trustees and debtors in possession, requiring both to commence an action within the specified time periods. The appointment of the various trustees is merely the starting point from which the clock begins to run in paragraph (1). Accordingly, an application of the plain language of § 546(a)(1) is

---

[21] Zambelli, WZZK, WODL and WTTO-TV contend that the provision that a preference action "may not be commenced after the **earlier of**" the two events stated in the statute would be stripped of meaning if § 546(a)(1) is interpreted to exclude debtors in possession because there is no two-year period running on the appointment of a trustee under § 546(a)(1) existing as an alternative to the closure or dismissal of the bankruptcy case under § 546(a)(2). There being no comparator limitation to § 546(a)(2), Zambelli, WZZK, WODL and WTTO-TV argue, the phrase "earlier of" loses its meaning. The Fourth Circuit Court of Appeals' reasoning effectively counters this argument. It is not the case that because the filing of a petition by a debtor in possession does not bring § 546(a)(1) into play, that § 546(a)(1) is thereby rendered devoid of meaning. Rather, § 546(a)(1) is a conjunction within a conditional: A (the statute of limitations has run) if either B (the case is closed or dismissed), or C (a trustee is appointed) and D (two years after appointment have passed). That not-C (no trustee has been appointed) simply implies that A will not be true unless B is true.

> not, in our view, inconsistent with the general statutory scheme of functional equivalency
> established by the language and legislative history of § 1107(a).

*Id.* at 983-84.  Finally, the Fourth Circuit Court of Appeals found persuasive a consideration that the

other Circuit Courts of Appeals had not, i.e., that the two year limitation period is initiated when the

trustee is appointed rather than when a debtor in possession files its petition "prevents any delay in

the commencement of such an action [by the debtor in possession] from penalizing unsecured

creditors who would benefit from the recovery of a preferential or fraudulent transfer."  *Id.* at 984.[22]

     The Seventh Circuit Court of Appeals, in *Gleischman Sumner Company v. King, Weiser,*

*Edelman & Bazar*, 69 F.3d 799 (7th Cir. 1995), came to the same conclusion as that reached by the

Fourth Circuit Court of Appeals in *Maxway*.  In *Gleishman*, the Court of Appeals focused on the

interplay of the language in § 1107(a) and § 546(a), and the consequences of permitting the

limitations period to run on the filing of the petition for reorganization by the Chapter 11 debtor in

possession:

> What is a "limitation on a trustee" for purposes of § 1107(a)?  Like the fourth
> circuit, we find the legislative history unenlightening and let the subject pass without
> repeating that court's analysis.  *Maxway*, 27 F.3d at 983, 985 n. 3.  Bankruptcy Judge Martin
> thought that "limitation" in § 1107(a) means substantive limitations only:  the debtor in
> possession has the rights of a trustee but must respect the restrictions.  For example, the
> avoiding power in 11 U.S.C. § 544 gives the trustee the rights of a lien creditor; under §
> 1107(a) a debtor in possession also has these rights but not, say, the rights of a secured
> creditor.  Under § 547 the trustee may avoid certain transfers made within 90 days of the
> bankruptcy but not others;  the debtor in possession is subject to the same limitations.  The
> statute of limitations in § 546(a)(1) is not a "limitation" in this sense, because it does not
> define the trustee's powers.  Indeed, § 546(a)(2) has a time limit for non-trustees:  the last
> moment to act is "the time the case is closed or dismissed."  On this understanding § 546(a)
> deals with the question when a power may be exercised, and § 1107(a) tells us who may
> exercise it.
>     Reading "limitation" in § 1107(a) to apply the trustee-specific rule of § 546(a)(1) to
> persons otherwise covered by § 546(a)(2) cannot put an end to incongruity under the
> pre-amendment § 546(a) and could make things worse.  Suppose the debtor runs the firm in
> bankruptcy for 18 months and a trustee then is appointed.  If the two-year period starts
> immediately because of § 1107(a), how much time is left to the trustee?  Six months, it
> seems; yet § 546(a)(1) says that the answer is two years.  And for good reason.  Debtors in
> possession — which is to say, equity investors and the managers they select — have
> incentives different from trustees, who usually represent the interests of creditors.  Equity
> investors accommodate vendors in order to continue the business, which means forbearing
> from legal action against those who were paid in the months preceding bankruptcy.  Exercise

---

[22] The Fourth Circuit Court of Appeals noted that the legislative history supporting its reading of the statute (or any reading of the statute, for that matter) is meager. *In re Maxway Corp.*, 27 F.3d at 985 n.3.

of the avoiding powers brings assets into the firm but creates a debt of equal size; avoiding powers reallocate claims among creditors but do not increase the firm's net wealth or improve its business prospects. Why should incumbent managers use them? What is more, equity investors and managers may be among the principal recipients of preferences, especially in closely held firms. *Cf. Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir. 1989). If the preference-recovery time is ticking while the original managers retain control, then any trustee eventually appointed may lack the ability to use the avoiding powers in the Bankruptcy Code — unless the time starts with the trustee's appointment, which must mean that it does not run while a debtor in possession manages the firm.

*Id.* at 801-02.

The Fifth Circuit Court of Appeals, in *In re CompuAdd Corp.*, 137 F.3d 880 (5th Cir. 1998), rejected the reasoning of the Fourth and Seventh Circuit Courts of Appeals. After noting the Seventh Circuit Court of Appeals' interpretation of the term "limitation" in *Gleishman* confined the term only to substantive limitations, the Fifth Circuit Court of Appeals argued, by contrast, that the word "limitation," without qualification, bore its standard meaning.

We reach this determination by relying upon the ordinary meaning of "limitation." Webster's definitions of "limitations" include "statute of limitations" . . . "a time assigned for something; specifically: a certain period limited by statute after which actions, suits or prosecutions cannot be brought in the courts." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1312 (3d ed. 1981). Additionally, Black's defines "limitation" as "a certain time allowed by a statute for bringing litigation." BLACK'S LAW DICTIONARY 835 (5th ed. 1991). We see no reason to exclude "statute of limitations" from the meaning of "limitations" in the context of § 1107(a) and we apply its common usage.

*Id.* at 883.

The Fifth Circuit Court of Appeals then canvassed not merely the prior statutory history of § 546(a)(1), but its subsequent history, including changes made by the Bankruptcy Reform Act of 1994.[23] *Id.* at 883-84. First, the Court of Appeals noted an intent of Congress, in enacting the new statute of limitations provision, to provide a standard limitation to all individuals capable of bringing a preference action. This intent, the Fifth Circuit Court of Appeals notes, was, according to the

---

[23]  The new § 546(a) states:

An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of —

    (1) the later of —

        (A) 2 years after the entry of the order for relief; or

        (B) 1 year after the appointment or election of the first trustee under section 702,
        1101, 1163, 1202, or 1302 of this title if such an appointment or such election
        occurs before the expiration of the period specified in subparagraph (A) ; or

    (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

comments to the new provision, not new to the Congress. Rather, the Fifth Circuit stated, in enacting the new § 546(a), Congress meant to "clarify" that section "by setting the entry of the order of relief as the starting point for the two-year statute of limitations." *Id*. at 8884 (*citing* H.R. Rep. No. 103-835, § 217, 103rd Cong. 2d Sess. (1994), reprinted in U.S.C.C.A.N. 3340, 3358). "Congress then specifically acknowledged the split of authority as courts struggled to interpret § 546(a)(1) in commenting that the purpose of a statute of limitations is to define the period of time that a party is at risk of suit." *Id*. While, as the Court of Appeals expressed, subsequent enactments do not constitute legislative history and can only be a "'secondarily authoritative exposition'" of the original § 546(a), the later clarification by Congress indicated that those courts deciding that the two year limitations period applied to debtors in possession under Chapter 11 were correct in their interpretation of the provision.

As has been noted by some of those courts examining it, the language of § 546(a), read in isolation, is clear. On the earlier of two events, the close or dismissal of a case, or two years subsequent to the appointment of a trustee under the listed sections, the statute of limitations will run. Were it simply a matter of reading § 546(a) without reference to other statutory provisions, the result would be clear — the limitations period in the instant action would not have run when the Trustee filed the preference actions. However, as with a preference action brought in a Chapter 11 case, the determination of whether the statute of limitations period begins to run when the municipal debtor in a Chapter 9 action files its bankruptcy petition depends of the interplay of the relevant sections of Chapter 9 and § 546(a).

Much of the argument regarding whether a debtor in possession in a Chapter 11 suit can start the two year limitation period running by filing its petition in the bankruptcy court is based on the language of § 1107(a). Similarly, resolution of whether a debtor in possession in a Chapter 9 proceeding can trigger the running of the two-year period depends on construing the comparable provision to § 1107(a) in Chapter 9, § 902(5). This provision states:

> In this chapter . . . "trustee", when used in a section that is made applicable in a case under this chapter by section 103(e) or 901 of this title means debtor. . . .

While "[i]t is axiomatic that the interpretation of a statute must begin, and usually ends, with the text of the statute," *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.*, 51 F.3d 235, 237 (11th Cir. 1995), straightforward application of § 902(5) to § 546(a)(1) would be meaningless, requiring that a

covered preference action be brought within "two years after the appointment of a **debtor**. . . ," a circumstance impossible under the Bankruptcy Code. This meaninglessness does not, however, as the Trustee suggests, yield a conclusion that the filing of a petition of bankruptcy cannot start the running of the two-year period set forth in § 546(a)(1). Rather, an interpretation of a statute's provisions yielding a nonsensical construction is an invitation to further examination of the statute's meaning. *See Scarborough v. Office of Personnel Management*, 723 F.2d 801, 819 (11th Cir. 1984). *Cf. Gun South, Inc. v. Brady*, 877 F.2d 858, 861 (11th Cir. 1989) (choosing not to interpret provision of the Gun Control Act to yield a nonsensical result).

The court concurs in the determination of the Third Circuit Court of Appeals in *In re Coastal Group, Inc.*, 13 F.3d at 84, that a hidebound adherence to the literal meaning of the phrase "appointment of a trustee" is erroneous. As that court pointed out, to require that the two-year period only begin to run upon **appointment** of a trustee would exclude the application of the limitations period to trustees clearly covered by the provision, but **elected** under § 702(b) of Title 11. Rather, the court should attempt to find a comparable phrase that gives effect to both § 546(a) and § 902(5). The most obvious approach would be to simply substitute the phrase "filing of a petition in the bankruptcy court by the debtor in possession" for the phrase "the appointment of a debtor under sections 702, 1104, 1163, 1302 or 1202 of this title."

The court further notes that the post-amendment § 546(a)(1) subjects debtors in possession, without qualification, to a two-year limitations period. Such subsequent legislative history would tend to imply, as the Fifth Circuit Court of Appeals aptly noted in *In re CompuAdd Corp.*, that Congress had originally intended § 546(a)(1) to provide a two-year limitations period to all actions brought by debtors in possession. *In re CompuAdd Corp.*, 137 F.3d at 884. However, each of the cases referenced by Congress in the legislative history to the revised § 546(a) involved a debtor in possession in a Chapter 11 case; thus, it is unclear whether Congress, in revising § 546(a), considered the same problem as it applied to municipal debtors under Chapter 9.

The differences and similarities of language between §§ 902(5) and 1107(a) can cast an indirect light on the cogency of various reasons for and against treating the filing of a petition in bankruptcy by a Chapter 9 debtor in possession as sufficient to start the running of the two-year limitations period. The court first notes that unlike § 1107(a), § 902(5) does not contain any language that the debtor in possession in a Chapter 9 case is "[s]ubject to any limitations on a

trustee" in performing duties akin to those performed by a trustee. Regardless of its belief that the "limitation" language relied upon by the various Courts of Appeals bears no import in the construction of § 1107(a),[24] the court notes that the absence of "limitations" language in § 902(5) does not have implications one way or the other. Rather than conferring duties and powers upon the debtor in possession, as § 1107(a) does, § 902(5) simply requires that in every instance in which the word or phrase containing the word "trustee" occurs in portions of the Bankruptcy Code applicable in a Chapter 9 proceeding, the word "debtor" or appropriate phrase containing the same should be substituted. This would seem to apply unconditionally, both to provisions setting forth the powers of the trustee and to provisions setting out the trustee's limitations.

Further, the court notes that "the realities of a municipal bankruptcy proceeding" are better served by requiring the debtor in possession to bring any preference action within two years of the filing of its petition. It is largely unfair to creditors, who, as the Fifth Circuit Court of Appeals noted, may have already closed their record books on the debtor, to be forced to reopen those books at some indefinite time in the future as the result of a preference action initiated some five, seven, or ten years after the filing of the municipal debtor's bankruptcy petition. The failure of a recalcitrant municipal body to file a preference action is remedied by the ability of a creditor in the Chapter 9 proceeding to request that a trustee be appointed to pursue that preference action. *See* 11 U.S.C. § 926(a). Indeed, the two year limitations period puts some onus on the creditors to determine early on what preferential transfers have been made and to push the debtor to pursue such transfers, either through settlement or through a preference action, or, if the debtor fails to take any action, to request the appointment of a trustee to pursue an action under § 926(a).

---

[24] As has been noted in the body of this opinion, Courts of Appeals have disagreed as to the meaning and import of the phrase "any limitations on a trustee serving in a case under this chapter" occurring § 1107(a). This court is of the opinion that this section simply applies those limitations on trustees that are set forth **in Chapter 11** to debtors in possession under the same chapter, such as, for example, the requirement that before modifying retiree benefits, the trustee "make a proposal to the authorized representative of the retirees" and provide information to the representative which would allow evaluation of the proposal under § 1114(f). That a debtor in possession, who is referenced individually and in concert with the trustee at several times in the statute, would have to follow those limitations ostensibly saddled solely on a trustee is by no means clear. Further, the heading of § 546 is not "Limitations on the powers of a trustee to bring avoidance actions," but simply "Limitations on avoiding powers." This language would indicate a general constraint on the **powers**, not on the trustee exercising them.

**B. Does the appointment of a trustee under § 926(a) restart the limitations period?**

In deciding whether the appointment of a trustee under § 926(a) restarts the limitations period, the court must first determine whether the appointment of a trustee, generally, would restart the limitations period. The court finds that it does not. In *Zilkha Energy Company v. Leighton*, the Tenth Circuit Court of Appeals, after determining that the filing of the petition for reorganization by a Chapter 11 debtor in possession will initiate the two-year limitations period, expressly avoided taking a position on the issue of whether in a case in which, subsequent to filing of the petition for reorganization, a trustee is appointed, the clock on the statute of limitations would start over. *Id.* at 1524 n.11.

The issue then came up in *In Re San Joaquin Roast Beef*, 7 F.3d 1413 (9th Cir. 1994), decided later in the same year that the Ninth Circuit Court of Appeals decided *In re Softwaire Center International, Inc.* In *San Joaquin Roast Beef*, the Ninth Circuit Court of Appeals obliquely addressed the situation pointedly avoided by the Tenth Circuit Court of Appeals in *Zilkhe*, whether the appointment of a trustee after the commencement of a Chapter 11 reorganization restarted the limitations period. One year after the filing of a petition for reorganization, a trustee under Chapter 11 was appointed. After another year and some days, the Chapter 11 proceeding was converted to a Chapter 7 proceeding and a different Chapter 7 trustee was appointed. The Chapter 7 trustee, after another year (and more than two years after the appointment of the original Chapter 11 trustee), brought a suit against the FDIC to recover preferential transfers. The FDIC argued that the preferential transfer action was untimely, as it had come over two years after appointment of the Chapter 11 trustee; the Chapter 7 trustee disputed the timeliness argument, contending that his appointment restarted the limitations period. The Court of Appeals found in favor of the FDIC, reasoning that although the interests of a Chapter 7 trustee and those of a Chapter 11 trustee may be divergent, restarting the limitations period under § 546(a) after appointment of the new trustee is unnecessary; the plain language of the statute implicates a single trustee appointment as initiating the limitations period. *Id.* at 1416.

Although not specifically deciding whether the appointment of the Chapter 11 trustee restarted the limitations period when a debtor in possession previously had control of the estate, the Court of Appeals asserted that "the statute of limitations begins running from the date the first trustee is appointed and that all subsequent trustees are subject to the same limitations." *Id.* at 1415.

However, this conclusion was open to two interpretations with regard to trustees appointed after the debtor in possession has had control of the estate for a period of time: It could mean that the statute of limitations begins to run when a trustee, **or a functionally equivalent debtor in possession,** is appointed or takes possession of the estate, or it could mean that the statute of limitations for all trustees starts to run when the first trustee is **appointed,** irrespective of whether a debtor in possession has previously held possession of the estate.

The Ninth Circuit Court of Appeals then issued seemingly conflicting opinions directly on the issue of whether appointment of a trustee would restart the limitations period. In *In re IRFM, Inc.*, 65 F.3d 778, 781 (9th Cir. 1995), the Court of Appeals commented that, in an action in which a Chapter 11 debtor's case had been converted to one under Chapter 7 and a Chapter 7 trustee had been appointed, "[t]he fact that [the debtor's] petition was subsequently converted to a Chapter 7 bankruptcy, and a Chapter 7 trustee appointed, did not start the clock ticking anew." Soon thereafter, in *In re Hanna*, 72 F.3d 114 (9th Cir. 1995), the Court of Appeals confronted a case in which a Chapter 11 trustee was appointed after the filing of the petitioner for reorganization by the Chapter 11 debtor. Holding that the appointment of the trustee under Chapter 11 restarted the limitations period in § 564(a)(1), the Court of Appeals attempted to distinguish its earlier rulings:

> We read *Softwaire Centre, San Joaquin Roast Beef, IRFM,* and the language of section 546(a) together to hold that whenever a Chapter 11 trustee is actually appointed under section 1104, the rule in *San Joaquin Roast Beef* applies, so that "the two-year statute of limitations begins running from the date the first trustee [i.e., the Chapter 11 trustee] is appointed." However, where no actual Chapter 11 trustee is ever appointed, *Softwaire Centre* and *IRFM* apply, and the debtor in possession is the functional equivalent of a Chapter 11 trustee.
>
> Therefore, under our cases and the pre-amended version of section 546, there are two distinct two-year limitations periods for avoidance actions subject to section 546(a). A debtor in possession gets two years from the date the case is filed. If a Chapter 11 trustee is actually appointed, the limitations period restarts and all trustees get two years from the date that Chapter 11 trustee was first appointed. If no Chapter 11 trustee is appointed, the limitations period expires two years after the date on which the petition was filed.

*Id.* at 117. At best, these cases are simply unhelpful to the problem facing this court, without a principled basis for distinguishing appointment of a trustee under § 702 from appointment of a trustee under § 1104, both of which provisions are explicitly detailed in the statute, as a basis for restarting or not restarting the limitations period set forth in § 546(a)(1).

From these cases, perhaps the only ones specifically on point with regard to appointment of trustees, the court finds no guidance. More insight is provided by the following reasoning used by

the Seventh Circuit Court of Appeals in coming to the conclusion that the two year limitations period should not start running on the filing of a petition for reorganization by a Chapter 11 debtor in possession:

> Suppose a debtor in possession operates the firm for three years, after which a trustee is appointed. On [the defendant's] view, preference- recovery actions are possible during years one and two, but not during year three, then are authorized again during years four and five, when the trustee has control. Such a silly result, with the statute of limitations fading in and out like the Cheshire Cat, cannot be justified by the language of § 1107(a). . . .

*Gleischman Sumner Company v. King, Weiser, Edelman & Bazar*, 69 F.3d at 802. While the possibility of a statute of limitations that blinks in and out of existence creates little justification for holding that the limitations period of § 546(a)(1) does not commence upon the filing of a bankruptcy petition by a debtor in possession, that same possibility does militate against the conclusion that the appointment of a trustee restarts the two-year limitations period.

Further, regardless of whether the appointment of a trustee under sections 702, 1104, 1163, 1302, or 1202 of Title 11 would restart the limitations period, the appointment of a trustee under § 926(a) does not cause the two year limitations period to spring into existence anew. First, and most importantly, § 926(a) is not listed in § 546(a)(1) among the trustees whose appointment would initiate the limitations period. Second, unlike the appointment of a trustee under other chapters of Title 11, the trustee appointed under § 926(a) is appointed in a limited circumstance and its powers are severely circumscribed:

> If the debtor refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a), or 550 of this title, then **on request of a creditor**, the court may appoint a trustee to pursue **such cause of action.**

11 U.S.C. § 926(a) (emphasis added).[25] The language of the subsection allows for the appointment of a trustee only when a particular preference action which may exist has not been filed by the debtor. Further, the appointment of such trustee is limited to the sole purpose of pursuing that particular "cause of action." The lack of a plural usage or general language in the statute indicates that it is not up to the trustee to determine who gets sued for a preference action and who does not; rather, it is a creditor who requests the appointment of a trustee for the purposes of pursuing a single cause of action and the court that appoints that trustee, who determine against whom a preference action may

---

[25] The court notes that there is an absence of caselaw interpreting this section of Title 11.

be brought.[26] Permitting the trustee to file an action regarding a particular transfer two years after his appointment for the specific purpose of pursuing such transfer seems absurd.

Finally, requiring creditors to request that bankruptcy court appoint a trustee to pursue an action within two years after the bankruptcy petition is filed will encourage such creditors to assert their interests quickly and require them to examine the debtor's accounts carefully before settling for a limited repayment, rather than to wait about hoping that the debtor will eventually bring such a preference action. Adroit creditors can protect their own interests within the two year period that would begin running at the filing of the bankruptcy petition by seeking the appointment of a trustee. Even if there is the municipality chooses not to pursue preference actions on its own, the open eyed creditor, seeing its interests impaired, has ample time within the two year limitations period to request that the court appoint a trustee to pursue any preference that the creditor wishes to have avoided.

## II. INITIAL TRANSFEREE.

A trustee or debtor in possession may recover an avoidable preference only from certain transferees. Section 550(a)(1) of Title 11 states that a trustee or debtor in possession can only recover, on an avoidable transfer of interest, the value of the transfer from "the initial transferee of such transfer or the entity for whose benefit such transfer was made. . . ."[27] The Eleventh Circuit Court of Appeals has held that the determination of whether an individual is an initial transferee, as opposed to a conduit or agent of the debtor, depends upon whether the debtor or the possessor of the property or funds had control of the property or funds that entered the individual's possession. *In re Chase & Sanborn Corp.*, 848 F.2d 1196, 1199 (11th Cir. 1988). "The control test, then, as adopted by this circuit, simply requires courts to step back and evaluate a transaction in its entirety to make sure that

---

[26] The court notes that the appointment of the Trustee in this action to pursue preference actions was a general appointment and that the Trustee determined who was and was not to be sued in a preference action, rather than such choice being made by a particular creditor and the court with respect to each action. Under this court's reading of § 926(a), the preference actions initiated by the Trustee were inappropriately brought in violation of § 926(a). The Trustee in this case had no authority to choose which actions to pursue. Although not an issue before it, this court notes that the general grant of authority to the Trustee to determine who could and who could not be sued could support dismissal of the instant actions, as the plaintiff Trustee lacked any authority to bring them.

[27] Section 550(a)(2) & (b) deals with mediate or immediate transferees of the initial transferee and exempts, immediate or mediate transferees who take for value, in good faith and without knowledge of the voidability or who are secondary transferees of the initial transferee. None of these sections are at issue here.

their conclusions are logical and equitable. This approach is consistent with the equitable concepts underlying bankruptcy law." *Id.* This test has also been referred to as "the conduit test." *See In re Chase & Sanborn Corp.*, 904 F.2d 588, 598 (11th Cir. 1990).

The Trustee's appeal with respect to Haas & Wilkerson came in response to a grant of summary judgment on the issue of whether it was an initial transferee under § 550(a). The court reviews a grant of summary judgment *de novo* on appeal, applying the same standards that bound the Bankruptcy Court. *Goodlin v. Medtronic, Inc.*, — F.3d —, —, 1999 WL 77205 at *1 (11th Cir. 1999). In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson v. Liberty Lobby*, 477 U.S. 242, 254-55 (1986). The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (*citing Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

There is no contrary evidence disputing the fact that the funds provided Haas & Wilkerson by ASFA were meant to be applied to ASFA's premiums on its property and casualty policy. At a minimum, for Haas & Wilkerson to have been a conduit ASFA must have provided the funds to it with the intention that those funds be provided to National Fire, whether an underlying obligation existed or not. ASFA was obligated to National Fire; National Fire could have brought an action against ASFA to recover the funds, had they not been provided to Haas & Wilkerson. Thus any funds paid Haas & Wilkerson by ASFA were, at a minimum, meant to satisfy ASFA's debt to National Fire. Haas & Wilkerson was then obligated to disburse the $45,000.00 it received from ASFA to National Fire, either in increments or in full. It had no authority to take those funds for its own accounts or to distribute it to anyone other than National Fire, with the exception, perhaps, of its own commissions. As the Bankruptcy Court noted, "simply because of the debtor's contractual

relationship with the insurer, the defendant had no right to retain the funds given it by the debtor; the defendant had no right to use those funds for any purpose other than to pass them along to the insurer; and the defendant had no right to divert those funds for its use." Memorandum Opinion of June 29, 1998 at 5.

There is no indication that Ballard, on the other hand, acted as a conduit, passing funds from ASFA to WENN-FM.  There existed no requirement from ASFA that Ballard distribute funds to WENN-FM.  ASFA did not direct that the funds paid to Ballard be provided to WENN-FM. Further, WENN-FM had no underlying action against ASFA; any claim of the media outlets for collection of debts would be against Ballard.  Further, as the Bankruptcy Court noted, Mr. Ballard, owner of Ballard, testified at trial that "Ballard had complete control over funds paid to it by the debtor."  As such, Ballard, not the media outlets, was the initial transferee of the preference of the $155,626.49.

CONCLUSION

For the foregoing reasons, the decisions of the Bankruptcy Court will be AFFIRMED, in part and REVERSED, in part. All claims against Zambelli, WZZK, WODL and WTTO-TV are to be dismissed, as the Trustee failed to bring such actions within the limitations period set forth in § 546(a). The Bankruptcy Court's grant of summary judgment with regard to Haas & Wilkerson and determination after trial that any preferential transfer to WENN-FM is not recoverable are AFFIRMED.

DONE and ORDERED this _____ day of February 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE